UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JOSEPH CARRARO,

           Plaintiff,

vs.                                                      Civ. No. 1:21-646 JCH/LF

ALLSTATE INDEMNITY COMPANY,

           Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Plaintiff's Motion for Remand* for lack of subject matter jurisdiction. ECF No. 38. After reviewing the Motion, Response, ECF No. 49, and Reply, ECF No. 54, the Court concludes that the Motion should be denied.

**I. Background**

On June 11, 2021 Plaintiff Joseph Carraro ("Plaintiff") filed a Complaint in Second Judicial District Court, Bernalillo County, State of New Mexico, asserting the following claims:

    Count 1: Bad Faith Failure to Pay a First Party Claim;

    Count 2: Violation of Trade Practices and Fraud Title of Insurance Code; and

    Count 3: Breach of Good Faith and Fair Dealing.

ECF No. 1-1. Plaintiff's Complaint stems from a dispute with his insurance provider, Allstate Indemnity Company ("Defendant").[1] ECF No. 1-1, ¶ 4.

---

[1] Defendant has not filed a motion seeking a name correction in the case caption, however in multiple pleadings Defendant states that that it is "incorrectly identified as Allstate Insurance Company," when the correct name is "Allstate Indemnity Company." *See e.g.* ECF No. 49 at 1. The Court takes note of this and will change the caption to accurately reflect Defendant's correct name.

1

The Complaint is based on two different incidents as alleged by Plaintiff. The first arises from allegations that on April 17, 2020, Plaintiff submitted an insurance claim because shingles from his roof were on the ground after a hail and windstorm. *Id.* at ¶ 5. Plaintiff asserts that he had three roofers inspect the roof and provide quotes which totaled $22,000 to $32,000 in damages. *Id.* at ¶ 6. After Defendant examined the roof, it allegedly advised Plaintiff that his claim did not meet his deductible and that he should withdraw his claim. *Id.* at ¶ 7. Defendant also allegedly advised Plaintiff that the damages to the roof were from a prior claim that was made two years before, in 2018. *Id.* at ¶ 8. The Complaint asserts that such conduct constitutes "bad faith and failure to pay a first party claim," and a "breach of good faith and fair dealing" by Defendant. *Id.* at 3-5.

The second incident is based on an allegation that Defendant paid an unauthorized claim that was filed by Plaintiff's neighbor against Plaintiff's insurance policy. *Id.* at ¶¶ 10-11. The purported reason for the neighbor's claim was to repair a sidewalk that was damaged by tree roots, presumably a tree that belonged to Plaintiff. *Id.* at ¶ 10. Plaintiff asserts that this was a frivolous claim and that Defendant "used such claim as the basis to cancel Plaintiff's insurance." *Id.* at ¶ 2. Plaintiff also asserts that the improper claim against his policy caused his insurance premium to increase, *id.* at ¶ 13, and that on May 15, 2021, Defendant informed Plaintiff that his policy was cancelled. *Id* at ¶ 14. The Complaint asserts that such conduct constitutes a "violation of trade practices and fraud title of [the] insurance code" and is a "breach of good faith and fair dealing." *Id.* at pp. 3-5.

Based on these allegations, Plaintiff filed the Complaint in state district court seeking "compensatory damages, expectation damages, consequential damages, ordinary and normal [sic] damages; special damages, statutory damages as allowed by law; punitive damages as allowed by law; [and] for any such further relief as deemed necessary and proper." ECF No. 1-1 at 5.

Defendant removed this case on July 14, 2021. ECF No. 1. Plaintiff moved for a remand thereafter on February 16, 2022, pursuant to 28 U.S.C. § 1447(c). ECF No. 38.

On February 25, 2022 (more than seven months after removal), Plaintiff entered a *Stipulation of All Damages and Attorney's Fee Sought in Either Federal or State Court*. ECF No. 47. Plaintiff indicates that his stipulation is a "clarification" of the amount in controversy and that upon discovery Plaintiff realized that in "good faith" he could not make a settlement demand that reached the jurisdictional amount needed for this Court to retain jurisdiction. *Id.* Plaintiff states that he is not seeking, "nor will he take" any amount over $75,000. ECF 38 and ECF 47. Plaintiff asserts that the Court does not have subject matter jurisdiction if the maximum amount in controversy is less than $75,000. ECF No. 38 at 3.

Defendant in its Response states that the Tenth Circuit and U.S. Supreme Court clearly establish that "a plaintiff cannot defeat subject matter jurisdiction simply by filing a post-removal stipulation to reduce the amount in controversy," s*ee* ECF 49 at 1, and that at the time of removal, Plaintiff's Complaint presented claims that were in excess of the $75,000 jurisdictional amount. *Id.* at 4-6.

**II. Discussion**

Plaintiff brings this removal claim asserting the Court lacks subject matter jurisdiction. "[T]here are two types of improperly removed cases: those in which the federal court has no subject matter jurisdiction and those with defects in the removal procedure itself." *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1076 (10th Cir. 1999) (citation omitted). A matter may be remanded back to state court if the federal court lacks subject matter jurisdiction (such as diversity jurisdiction). 28 U.S.C. § 1447(c). Diversity jurisdiction requires diversity of citizenship and an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

Here, Plaintiff asserts the Court lacks subject matter jurisdiction because one of the requirements for diversity jurisdiction is not present. Diversity is not contested here. Plaintiff only challenges the amount in controversy requirement.

Plaintiff's Motion to Remand raises two issues. The first is whether the Court is divested of subject matter jurisdiction because Plaintiff filed a post-removal stipulation asserting that he would not "take a recovery amount beyond $75,000." ECF No. 47. The second question is—as determined by the answer to the first question—whether the amount in controversy is satisfied.

### A. The Post-Removal Stipulation

The Court first addresses Plaintiff's post-removal stipulation. *See* ECF No. 47. Plaintiff asks the Court to find that the Complaint he filed in state court was ambiguous, and that he "had *not* previously demanded any amount in his pleading or otherwise," and therefore the stipulation only serves as a clarification of the amount in controversy. ECF No. 54 at 2-3. Plaintiff seeks to distinguish his stipulation from one that *reduces* the amount in controversy to one that instead *clarifies* the amount in controversy. *Id.* The Court is not persuaded.

It is well established that once the district court's diversity jurisdiction attaches at the time of removal, a plaintiff may not subsequently divest the court of jurisdiction and force remand to state court by reducing the amount in controversy. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938); s*ee also Miera v. Dairyland Ins. Co*., 143 F.3d 1337, 1340 (10th Cir. 1998) ("[o]nce jurisdiction has attached, events subsequently defeating it by reducing the amount in controversy are unavailing."). The Sixth Circuit has held that, "post-removal stipulations do not create an exception to the rule articulated in *St. Paul*," further noting that, "[b]ecause jurisdiction is determined as of the time of removal, events occurring after removal that reduce the amount in controversy do not oust jurisdiction." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir.

4

2000). A stipulation that clarifies the amount in controversy is only permissible when the complaint is ambiguous. *See Youell v. Magellan Health Services of New Mexico et al.*, 2018 WL 344959, at *3 (D.N.M. 2018); *Yanez v. State Farm Fire & Cas. Co.*, No. 1:19-CV-00546 KWR/KK, 2020 WL 128309, at *3 (D.N.M. Jan. 10, 2020).

Here, Plaintiff's Complaint is not so ambiguous as to take advantage of the exception to the well-established rule. Plaintiff's stipulation appears to be only a willingness to settle for less than $75,000. Plaintiff's Complaint includes a list of seven different types of damages he seeks relief for to include "punitive damages" and "statutory damages as allowed by law," as well as the specific amount of $22,000 to $32,000 in damages. Plaintiff's Complaint specifically asserts that the roofers provided quotes that totaled $22,000 to $32,000 in damages, which is contrary to his assertion that the did *not* previously demand any amount in his pleading or otherwise. *See* ECF No. 54 at 2. The request for specific damages in Plaintiff's Complaint works against his assertion that his stipulation is merely a clarification of an ambiguous Complaint. If the Complaint did not provide for any specific amount of damages it might potentially be considered ambiguous, but that this not the case here. The Court finds that Plaintiff's Complaint is not ambiguous, and that his stipulation is not merely a clarification.

### B. Amount in Controversy

Having determined that the post-removal stipulation does not divest the Court of jurisdiction, the Court next addresses whether Defendant has met its burden of showing jurisdictional facts that made it *possible* that $75,000 was in play on the date of removal. Defendant argues that "at the time of removal, the Complaint presented a combination of facts and theories of recovery that could have supported a claim in excess of $75,000." ECF No. 49 at 4 (internal quotation marks omitted).

The amount in controversy "is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). "[T]he propriety of removal is judged on the complaint as it stands at the time of the removal." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) (citation omitted). The Tenth Circuit has stated that a "defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play." *McPhail*, 529 F.3d at 955 (citation omitted) (emphasis in original). Once a defendant puts forth jurisdictional facts that make it possible the amount in controversy exceeds $75,000, the case stays in federal court unless it is "legally certain" that less than $75,000 is at stake. *Id.* at 954. A defendant may prove these jurisdictional facts by pointing to the complaint, by calculation from the complaint's allegations, interrogatories, affidavits, or "other evidence submitted in federal court afterward," to determine the amount in controversy. *Id.* at 955-56. A defendant must establish the jurisdictional amount by a "preponderance of the evidence." *Id*. at 953-55.

When calculating the amount in controversy, the district court should consider both actual damages and punitive damages that may be recoverable under the complaint. *Bell v. Preferred Life Assur.* Soc'y *of Montgomery, Ala.*, 320 U.S. 238, 240 (1943); *see also Duran v. Marathon Asset Mgmt., LP*, 621 F. App'x. 553, 554 (10th Cir. 2015) (unpublished) (noting the court must consider punitive damages when determining the amount in controversy). In New Mexico and as affirmed by the Tenth Circuit, it has not been uncommon for a jury to award more than twice the amount in compensatory damages. *See e.g., Am. Nat. Prop. & Cas. Co. v. Cleveland*, 293 P.3d 954 (N.M. App. Ct. 2013) (jury awarded the plaintiff $50,000 in punitive damages after finding that an insurer breached its contract with the plaintiff and awarded $8,260.08 in damages); *Capstick v. Allstate Ins. Co.*, 998 F.2d 810 (10th Cir. 1993) (affirming a jury's award of $2 million in damages on a

bad faith claim against insurance provider, while the compensatory damages were only $1,500). The New Mexico courts have only discouraged punitive damages that exceed a ten to one ratio in economic injury cases. *Walker v. THI of New Mexico at Hobbs Ctr.*, 803 F.Supp.2d 1287, 1327 (D.N.M. 2011).

Here, the Complaint specifically alleges that between $22,000 and $32,000 in damages is at play for the condition of Plaintiff's roof. ECF No. 1-1 at ¶ 6. The Court will rely on the higher estimate from this range to calculate the amount of damages potentially at play. The Complaint also specifically alleges that Plaintiff is "statutorily entitled to an additional twenty-five percent (25%) over what the insurance coverage should provide.[2]  If an additional twenty-five percent (25%) is added to what the insurance coverage should allegedly provide ($32,000), then the amount Plaintiff seeks in compensatory damages would equal $40,000. This calculation only accounts for the claims for the roof damage to Plaintiff's house. *See* ECF No. 1-1 at ¶¶ 5-7. In addition to this $40,000, Plaintiff also makes a claim for punitive damages alleging bad faith by Defendants. ECF No. 1-1 at ¶ 19. Relying on the common calculation for estimating punitive damages, the Court multiplies the claimed compensatory damages ($40,000) by two. That calculation amounts to $80,000 in punitive damages in addition to $40,000 in compensatory damages, which exceeds the $75,000 jurisdictional requirement. The Court notes that this calculation does not account for the allegation that Defendant paid out an unauthorized claim which adversely affected Plaintiff's insurance policy and rates, *Id*. at ¶ 36, and also does not account for "other damages to the house." *Id*. at ¶ 9. Based solely on the facts alleged in the

---

[2] Plaintiff does not point to the authority he relies on for this proposition of statutory entitlement. Defendant does not dispute that an additional twenty-five percent (25%) is fairly at play and so the Court considers this amount in its calculation as well.

Complaint, the Court agrees with Defendant that more than $75,000 was at play at the time of removal.³

Additionally, the Court is also permitted look beyond the Complaint if a defendant points to "interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward," in proving jurisdictional facts. *See McPhail*, 529 F.3d at 956. Here, Defendant points to a deposition—taken just days before Plaintiff's stipulation was filed—in which Plaintiff testified that the amount in controversy contemplated at the time the Complaint was filed well-exceeded $75,000, even into millions of dollars in possible recovery. ECF No. 49 at 6. While the transcript does show that Plaintiff stated his claims well-exceeded $75,000, he also stated he "just wanted to be treated fairly by a jury," ECF No. 49-1 at 3, (p. 138, ¶ 10), and that he "[didn't] know what [his claim] was worth." *Id*. at 2 (p.137, ¶ 24). Nonetheless, Plaintiff also never agreed that his claim was for *less than* $75,000. Outside of Plaintiff's post-removal stipulation, Plaintiff did not assert with any legal certainty that his claim was for less than $75,000. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 289 ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

After having examined the contents of the Complaint and the allegation in the Notice of Removal, the Court concludes that Defendant did affirmatively establish jurisdiction by proving jurisdictional facts that made it possible that $75,000 was in play. The Court has not been divested of subject matter jurisdiction by Plaintiff's post-removal stipulation that he will not take anything less than $75,00.

---

³ The Court notes that according to Defendant, Plaintiff also seeks attorney's fees, ECF No. 49 at 5, however, in the Court's reading of Plaintiff's pleadings, there is not an explicit demand for attorney's fees. Plaintiff does request in the Complaint's prayer for relief "[s]tatutory damages as allowed by law," however the Court refuses to read into that request a more specific demand for attorney's fees.

8

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Remand*, ECF No. 38, is **DENIED**.

                                                _____
                                                SENIOR UNITED STATES DISTRICT JUDGE