IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH CARRARO

    Plaintiff,

v.                                                                           Case No. 1:21-cv-00646-JCH-LF

ALLSTATE INSURANCE COMPANY

    Defendant.

### MEMORANDUM OPINION AND ORDER

    Plaintiff Joseph Carraro sued Defendant Allstate Indemnity Company, alleging that Allstate unlawfully denied coverage to his damaged roof.[1] Allstate disagreed and filed *Allstate's Motion for Summary Judgment* (ECF No. 60). Because no genuine dispute as to any material fact exists and Allstate is entitled to judgment as a matter of law, the Court grants Allstate's motion.

**I.     BACKGROUND**

    The parties do not dispute the following facts. Mr. Carraro insured his Albuquerque home with Allstate. *See* Def.'s Ex. A, at decls. (ECF No. 60-1); Pff.'s Resp. 3 (ECF No. 63). The insurance policy covered property loss that wind and hail caused independently of other sources of damage. *See* ECF No. 60-1, at 5; ECF No. 63, at 3. But the policy excluded property loss due to wind and hail plus aging or wear and tear. *See* ECF No. 60-1, at 7-8; ECF No. 63, at 3.

    The policy provided Allstate with obligations and rights for when a third party sued an insured party. *See* ECF No. 60-1, at 19; ECF No. 63, at 3. If an insured party became liable for property damage arising from an event that the policy covered, then Allstate would pay damages.

---

[1] Mr. Carraro incorrectly identified the defendant as Allstate Insurance Company in his complaint. *See* Compl. 1 (ECF No. 1-1); Mot. for Summ. J. 1 (ECF No. 60).

1

ECF No. 60-1, at 19; ECF No. 63, at 3. The policy stated that "[Allstate] may investigate or settle any claim or suit for covered damages against an insured person." ECF No. 60-1, at 19; ECF No. 63, at 3. The policy continued, "If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent." ECF No. 60-1, at 19; ECF No. 63, at 3.[2] This policy applied to three insurance claims between 2018 and 2020. ECF No. 60, at 2 n.1; ECF No. 63, at 3.

### *Mr. Carraro's 2018 Claim*

On June 1, 2018, wind and hail damaged Mr. Carraro's roof and caused a leak inside his home. *See* Def.'s Ex. E, at 2 (ECF No. 60-5); ECF No. 63, at 3. Mr. Carraro's insurance agent, Jay Pirkle, initiated a claim. *See* ECF No. 60-5, at 1; ECF No. 63, at 1. Claim representative Antonio Manning inspected Mr. Carraro's house. *See* Def.'s Ex. G, at 1 (ECF No. 60-7); ECF No. 63, at 3. Mr. Manning estimated repairs to damaged shingles on the north slope of the roof to be $4,024.93. *See* ECF No. 60, at 5; ECF No. 60-7, at 4; ECF No. 63, at 3; *see also* Def.'s Ex. I, at 1 (ECF No. 60-9) (expressing view that only north slope should be replaced). Mr. Manning sent Mr. Carraro a letter explaining the claim settlement and a check for $3,524.93—the cost of repairs minus a $500.00 deductible. *See* Def.'s Ex. H, at 1-2 (ECF No. 60-8); ECF No. 63, at 3.

---

[2] The policy provided a one-year limitations period for suing Allstate. *See* ECF No. 60-1, at 18. Mr. Carraro claims to dispute the fact of a one-year limitation period that started after the inception of loss or damage. *See* ECF No. 63, at 3. But Mr. Carraro's explanation for his dispute reveals that he contends only that the limitations period does not bar his suit. *See id.* He does not actually dispute the existence or start of the limitations period. *See id.* The Court thus considers the existence and start of the limitations period to be undisputed. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

Allstate contends that the limitations period bars this suit. In the end, however, the Court will decide this case on other grounds.

Mr. Carraro challenged Mr. Manning's estimate. *See* ECF No. 60-9, at 2. In Mr. Carraro's view, the entire roof needed replacement. *See id.* Mr. Manning reinspected the property. *See id.* at 1. He affirmed his earlier view—the damage did not warrant an entire replacement but only a replacement to the north slope. *See id.* The affirmation concluded this claim. *See id.*[3]

### Mr. Bornfield's Claim

On July 6, 2018, Mr. Carraro's neighbor, Steven Bornfield, claimed that the roots of a tree on Mr. Carraro's property damaged Mr. Bornfield's driveway. *See* Def.'s Ex. B, at 83 (ECF No. 60-2); Def.'s Ex. C, at 1 (ECF No. 60-3); ECF No. 63, at 3. Mr. Bornfield submitted a claim to Allstate. *See* ECF No. 60-2, at 83; ECF No. 60-3, at 1; ECF No. 63, at 3. After an inspection, Allstate paid Mr. Bornfield $8,730.00 for damage. *See* Pff.'s Ex. 1 to Compl. 3 (ECF No. 1-1); ECF No. 60-2, at 84. Allstate consequently increased Mr. Carraro's premiums. *See* ECF No. 60-2, at 84; Pff.'s Ex. 1, at 2, ¶ 10 (ECF No. 63-1).[4]

### Mr. Carraro's 2020 Claim

Mr. Carraro lived in New York from 2018 to April 2020. *See* Def.'s Ex. F, at 3 (ECF No. 60-6); ECF No. 63, at 3-4. When he returned to New Mexico in April 2020, he noticed shingles falling off of the roof. *See* Def.'s Ex. J, at 9 (ECF No. 60-10); ECF No. 63, at 4 (not disputing observation of shingles). Mr. Carraro called Mr. Pirkle. *See* Pff.'s Ex. 2, at 13 (ECF No. 63-2).

After describing the shingles to Mr. Pirkle, Mr. Carraro testified that Mr. Pirkle said that a storm occurred before Mr. Carraro's return. *See id.* Mr. Carraro recalled that Mr. Pirkle reported

---

[3] Mr. Carraro does not admit or deny the facts in this paragraph. *See* ECF No. 63, at 3. As a result, the Court considers these facts to be undisputed. *See* Fed. R. Civ. P. 56(e)(2).

[4] Neither Allstate nor Mr. Carraro cite the premium increase in their undisputed material facts. But each party's exhibits support this fact. *See* ECF No. 60-2, at 84; ECF No. 63-1, ¶ 10. The Court thus considers the premium increase to be undisputed. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

that the storm affected a couple of residences. *See id.* And Mr. Carraro recounted that Mr. Pirkle told him, "So I assumed your house was affected like the others." *See id.* According to Mr. Carraro, Mr. Pirkle added, "You're probably going to need a new roof." *See id.* at 14. Mr. Carraro testified that Mr. Pirkle made this statement based on the other homes needing roof replacements. *See id.* But Mr. Carraro added that Mr. Pirkle had not seen Mr. Carraro's roof. *See id.* Next, according to Mr. Carraro, Mr. Carraro asked Mr. Pirkle, "A new roof? Who's going to pay for that?" *See id.* Mr. Carraro remembered Mr. Pirkle responding, "Oh, Allstate will pay for it." *See id.*[5]

On May 15, 2020, Mr. Carraro initiated another insurance claim with Mr. Pirkle. *See* Ex. K, at 1 (ECF No. 60-11); ECF No. 63, at 4. Mr. Carraro alleged damage caused by a hailstorm on September 23, 2019. *See* ECF No. 60-11, at 1; ECF No. 63, at 4.

Allstate claim representative Carey O'Connor inspected Mr. Carraro's house. *See* ECF No. 60-11, at 1; ECF No. 63, at 4. Ms. O'Connor found that hail damaged soft metal rain caps and turtle vents. *See* Def.'s Ex. L, at 2 (ECF No. 60-12). And she found that wind damaged some shingles. *Id.* But Ms. O'Connor determined that wind or hail did not damage the remaining roof shingles. *Id.* To the contrary, Ms. O'Connor found that damage to the remaining roof shingles resulted from wear and tear, aging, deterioration, construction, and maintenance. *Id.* Thus, Ms. O'Connor concluded that Allstate would cover the costs of only the damage caused by wind and

---

[5] Allstate does not contest the exchange in this conversation. But Allstate disputes the cause of the damage to the roof. The Court thus finds the fact of the conversation's occurrence—as opposed to the truth of its substance—to be undisputed. *See* Fed. R. Civ. P. 56(c)(3), 56(e)(2).

The description of the conversation above is from Mr. Carraro's deposition. *See* ECF No. 63-2, at 1. Mr. Carraro offered similar—if not stronger—testimony in his answer to an interrogatory. *See* ECF No. 60-10, at 9. Mr. Carraro wrote: "During that telephone call [between Mr. Carraro and Mr. Pirkle], Plaintiff was told, by agent Pirkle, that Allstate had repaired the roof for other homes on his street due to damage from a storm, and that he definitely had a claim, and would probably have to have the roof replaced. Plaintiff does not have any personal knowledge of the storm." *Id.*

hail. *Id.*[6] Ms. O'Connor paid Mr. Carraro $830.72—$1,330.72 for covered damage minus a $500.00 deductible. *See* ECF No. 60-11, at 2; ECF No. 63, at 4.

Mr. Carraro contested Ms. O'Connor's conclusions. Mr. Carraro submitted a bid by Statewide Roofing and Drywall for a roof replacement and interior drywall repair for $22,137.02. *See* Pff.'s Ex. 2 to Compl. 13 (ECF No. 1-1); ECF No. 63, at 4.[7] Allstate notes that the bid contains no conclusions about the source of the alleged damage. ECF No. 60, at 6; *see* ECF No. 1-1, at 13. Mr. Carraro contends that "Statewide Roofing came out to inspect the Plaintiff's roof with the understanding that the roof had sustained hail damage." ECF No. 63, at 4. Because Mr. Carraro does not support his contention about the context of Statewide's bid by citing to a particular part of the record, there is no genuine dispute that the bid is silent about the source of the damage. *See* Fed. R. Civ. P. 56(c)(1).

*****

On June 11, 2021, Mr. Carraro filed a complaint in New Mexico state court. Compl. 1 (ECF No. 1-1). He alleged a bad faith failure to pay a first party claim (Count I), unfair claims practices in violation of section 59A-16-20 of the New Mexico Insurance Code (Count II), and a breach of the implied covenant of good faith and fair dealing (Count III). *See id.* at 3-4. Invoking jurisdiction under 28 U.S.C. § 1332(a) and § 1441, Allstate removed the case to this Court. *See* Notice of Removal 1-2 (ECF No. 1).

---

[6] Mr. Carraro disputes Ms. O'Connor's conclusions, but he does not challenge the fact that Ms. O'Connor made the above conclusions. The Court therefore finds the fact that Ms. O'Connor made the above conclusions (as opposed to their substance) to be undisputed. *See* Fed. R. Civ. P. 56(c)(3), 56(e)(2).

[7] Chronologically, Mr. Carraro apparently submitted his estimate before Allstate resolved this claim. *See* ECF No. 1-1, at 13 (noting date of May 26, 2020).

Allstate proffered the testimony of a professional engineer, Roderick Rennison, as an expert witness. *See* Def.'s Ex. M, at 1 (ECF No. 60-13). Mr. Rennison found that "[t]here was no hail damage to the roof coverings at the Residence." *Id.* at 4, ¶ 1. He noted that hail apparently damaged vent caps and window screens. *See id.* at 4, ¶¶ 2-3. But Mr. Rennison stated that Allstate paid Mr. Carraro for the damage to the vent caps and window screens. *See id.* And Mr. Rennison concluded that "[t]here was age-related deterioration of the roof coverings and flashings and of repairs to them." *Id.* at 4, ¶ 4.[8]

## II.   DISCUSSION

This case invokes the Court's diversity jurisdiction. The Court thus applies the substantive law of New Mexico. *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007). But federal law governs the standards for granting or denying summary judgment. *See Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 662 F.3d 1275, 2184 (10th Cir. 2011).

Under federal law, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248-50. And an issue is genuine if the evidence might lead a reasonable jury to return a verdict for the nonmovant. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Allstate, as the movant, "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."

---

[8] Mr. Carraro disputes Mr. Rennison's conclusions, but he does not challenge the fact that Mr. Rennison made the above conclusions. The Court therefore finds the fact that Mr. Rennison made the above conclusions (as opposed to their substance) to be undisputed. *See* Fed. R. Civ. P. 56(c)(3), 56(e)(2). And as the Court will show, Mr. Carraro ultimately fails to show a genuine dispute about the substance of Mr. Rennison's conclusions.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Allstate meets this burden, then the burden shifts to Mr. Carraro. *See id.* Because Mr. Carraro would also have the burden of proof at trial, he would need to "identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013); *see also* Fed. R. Civ. P. 56(c)(1) (enumerating sources that parties may reference); Rule 13-302B NMRA (instructing jury that burden belongs to plaintiff). Mr. Carraro could not rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *see also Cypert v. Indep. Sch. Dist. No. I-050*, 661 F.3d 477, 481 (10th Cir. 2011) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004))). And if Mr. Carraro fails to meet this shifted burden, Allstate would receive summary judgment. *See Water Pik, Inc.*, 726 F.3d at 1143-44.

### A. Claims Involving Mr. Bornfield's Settlement

Two of Mr. Carraro's legal claims—unfair practices in violation of section 59A-16-20 and breach of the implied covenant of good faith and fair dealing—relate to Allstate's settlement of Mr. Bornfield's insurance claim. *See* ECF No. 1-1, at 3-4, ¶¶ 21-22, 25-26, 36. In the Court's understanding, Mr. Carraro's argument distills into the following: (1) Allstate never informed Mr. Carraro about Mr. Bornfield's claim, (2) Mr. Carraro never consented to Allstate settling Mr. Bornfield's claim, (3) the settlement increased Mr. Carraro's premiums, and therefore (4) Mr. Carraro suffered a legally cognizable harm.[9]

---

[9] Mr. Carraro alleges that Allstate cancelled Mr. Carraro's policy on May 15, 2021. *See* ECF No. 1-1, ¶ 14. He adds that Allstate's settlement of Mr. Bornfield's claim harmed his ability to find other insurance. *See* ECF No. 63, at 6; ECF No. 63-1, ¶ 10. This allegation does not affect the analysis.

Mr. Carraro's argument runs smack into the policy's plain language. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 18, 945 P.2d 970 ("[A]bsent a statute to the contrary, 'insurance contracts are construed by the same principles which govern the interpretation of all contracts.'" (quoting 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 21:1 (3d ed. 1996))); *King v. Travelers Ins. Co.*, 1973-NMSC-013, ¶ 24, 505 P.2d 1226 ("The terms of the policy should be construed in their plain, ordinary and usual sense."). The policy empowered Allstate to settle any claim for covered damages against an insured person. *See* ECF No. 60-1, at 19 ("We may investigate or settle any claim or suit for covered damages against an insured person."). And the parties do not point to a provision in the policy that made Mr. Carraro's consent a prerequisite to settlement. In fact, Mr. Carraro admits that "the contract provision of the policy allowed [Allstate] to settle with [Mr. Bornfield]." ECF No. 63, at 6.

Because the policy does not help Mr. Carraro, he must turn elsewhere. In New Mexico insurance law, an insurer's *failure to settle* may give rise to legally cognizable harm. *See* NMSA 1978, § 59A-16-20(E) (1984) (prohibiting an insurer from "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear"); *see, e.g.*, *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 18, 85 P.3d 230 ("Under New Mexico law, an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded. . . . We have defined 'frivolous or unfounded' as meaning an arbitrary or baseless *refusal to pay* . . . ." (emphasis added)); *Dairyland Ins. Co. v. Herman*, 1998-NMSC-005, ¶ 13, 954 P.2d 56. But an insurer's *decision to settle* is different.

Neither party nor the Court has found a case—much less one from New Mexico—recognizing a legal claim based on premium increases after a lawful settlement. To the contrary,

courts consistently reject claims against insurers whose lawful decisions to settle raise premiums. *See, e.g.*, *New Plumbing Contractors, Inc. v. Edwards, Sooy & Byron*, 121 Cal. Rptr. 2d 472, 474 (Ct. App. 2002); *Selkirk Seed Co. v. State. Ins. Fund*, 22 P.3d 1028, 1031-32 (Idaho 2000); *Frankel v. St. Paul Fire & Marine Ins. Co.*, 759 A.2d 869, 358-61 (N.J. Super. Ct. App. Div. 2000); *Sharpe v. Physicians Protective Tr. Fund*, 578 So. 2d 806, 808 (Fla. Dist. Ct. App. 1991). Mr. Carraro, facing the weight of this authority, points to two sources to support his legal claim: the New Mexico Insurance Code and common law. Both fail.

        1.       **Section 59A-16-20(I)**

Mr. Carraro contends that Allstate violated section 59A-16-20(I) of the New Mexico Insurance Code. The statute prohibits "attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker." Section 59A-16-20(I). According to Mr. Carraro, Allstate violated this prohibition because "[Mr. Carraro] did not believe that he was liable for the Bornfield sidewalk," and "Allstate never informed [Mr. Carraro] of the claim on his insurance or that the claim was filed." ECF No. 63, at 5.

Mr. Carraro's allegations do not fit the statute's prohibitions. As an aside, one of Allstate's exhibits undermines Mr. Carraro's alleged ignorance of Mr. Bornfield's claim. *See* ECF No. 60-2, at 83 (detailing phone tag between Allstate and Mr. Carraro regarding Mr. Bornfield's claim). Even if Mr. Carraro were ignorant of Mr. Bornfield's claim, however, the lack of notice would not violate section 59A-16-20(I). Nor would this statutory provision be violated if Mr. Carraro did not consent to the settlement.

Allstate settled Mr. Bornfield's claim on the basis of Mr. Carraro's *policy* rather than an *application*. The statute distinguishes between policy and application. *See* Antonin Scalia & Bryan

9

A. Garner, *Reading Law: The Interpretation of Legal Texts* 145 (2012) ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."); *compare* § 59A-16-20(D) (prohibiting act related to policy), *with* § 59A-16-20(I) (prohibiting act related to application). And—even under the incorrect assumption that policy and application are synonymous—Mr. Carraro does not point to an alteration of his policy that resulted in Mr. Bornfield's settlement. In short, Allstate did not violate section 59A-16-20(I).

### 2. Implied Covenant of Good Faith and Fair Dealing

Mr. Carraro next turns to the common law implied covenant of good faith and fair dealing. "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 1999-NMSC-006, ¶ 35, 976 P.2d 1 (quoting *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 16, 872 P.2d 852). But this implied covenant is not limitless: "the implied covenant of good faith and fair dealing cannot be used to overcome or negate an express term contained within a contract." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 8, 188 P.3d 1200.

The implied covenant of good faith and fair dealing does not help Mr. Carraro for three reasons. First—and most importantly—the express terms of the policy authorized Allstate's settlement with Mr. Bornfield. The implied covenant cannot negate Allstate's express rights under the contract. *See Sanders*, 2008-NMSC-040, ¶ 8.

Second, Mr. Carraro benefited from his agreement with Allstate. Allstate—not Mr. Carraro—paid Mr. Bornfield $8,730.00 for the loss to his property. *See* ECF No. 1-1, at 3; ECF No. 60-2, at 84. This is the type of benefit that one expects to receive from an insurance contract.

And third, holding that the implied covenant of good faith and fair dealing sometimes creates a duty not to settle would clash with another—already established—duty. In New Mexico, "good faith does impose upon the insurer the duty to settle whenever practicable." *Herman*, 1998-NMSC-005, ¶ 13; *see also Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 1984-NMSC-107, ¶ 10, 690 P.2d 1022 ("It is the policy of this state to favor settlement whenever feasible."). Mr. Carraro's argument, therefore, would result in good faith imposing a duty to settle and a duty not to settle. The Court declines to create this Catch-22.

### 3. Conclusion to Claims Involving Mr. Bornfield's Settlement

Mr. Carraro has not shown how Allstate's settlement with Mr. Bornfield created a legally cognizable harm. And no genuine dispute of material fact alters this conclusion. As a result, Allstate is entitled to summary judgment on Mr. Carraro's legal claims arising from this settlement.

### B. Claims Involving Mr. Carraro's Roof

Mr. Carraro levies three legal claims against Allstate based on the insurance claims for his roof: bad faith failure to pay a first party claim, unfair claims practices, and breach of the implied covenant of good faith and fair dealing. *See* ECF No. 1-1, at 3-4, ¶¶ 16-18, 21-23, 30-35. To support the three claims, Mr. Carraro's makes several arguments: (1) Allstate knowingly and wrongfully denied Mr. Carraro coverage or payment, *see id.* ¶¶ 16-17, 23, 30, 34-35; (2) Allstate failed to evaluate Mr. Carraro's insurance claims in a timely matter, *see id.* ¶¶ 18, 21-23, 32; and (3) Allstate failed to inform Mr. Carraro of available coverage, *see id.* ¶¶ 18, 21, 23, 31, 33.

Mr. Carraro does not provide any evidence for or make any underlying arguments about (2) and (3). That is, besides his complaint's assertions, Mr. Carraro says nothing about Allstate's alleged failure to timely evaluate Mr. Carraro's insurance claims and Allstate's alleged failure to inform Mr. Carraro of available coverage. *See generally* ECF No. 63. Allstate, by contrast,

11

submitted evidence of its representatives answering Mr. Carraro's insurance claims. *See* ECF No. 60-8; ECF No. 60-11. In his response brief, Mr. Carraro does not contend that the representatives' letters were untimely or that the letters withheld information. *See generally* ECF No. 63.

This leaves the alleged denial of coverage or payment. But this argument has a necessary predicate: the policy covered the damage to Mr. Carraro's roof. Recall that Allstate's expert, Mr. Rennison, found that hail did not damage the roof. *See* ECF No. 60-13, at 4, ¶ 1. Rather, in Mr. Rennison's view, age-related deterioration was present on the roof coverings, flashings, and repairs to the roof coverings and flashings. *See id.* at 4, ¶ 4. Mr. Rennison also found that hail apparently damaged vent caps and window screens, but Allstate paid for this damage. *See id.* at 4, ¶¶ 2-3. *See* ECF No. 60-1, at 5

If Mr. Rennison's opinion about the roof's damage is true, then the policy would not cover damage to the full roof (unlike the vent caps and window screens). After all, the policy excluded property loss due to wind and hail plus aging or wear and tear. *See* ECF No. 60-1, at 7-8. Allstate, therefore, has met its "initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler*, 144 F.3d at 671; *see also Brown v. Am. Bank of Com.*, 1968-NMSC-096, ¶ 12, 441 P.2d 751 ("[T]he court must interpret and enforce the contract which the parties made for themselves.").

The burden thus shifts to Mr. Carraro, who must support his position that the policy covered the damage to his roof. *See id.* And Mr. Carraro must do more than show that wind and hail damaged the roof; to fall within the policy, the damage must be from wind and hail alone. *See* ECF No. 60-1, at 7-8. Said otherwise, Mr. Carraro must "set forth specific facts 'that would be admissible in evidence' . . . from which a rational trier of fact" could find that aging did not damage the roof and that wind and hail did so independently. *Adler*, 144 F.3d at 671.

### 1.     The Absence of Any Genuine Dispute of Material Fact

Mr. Carraro did not introduce expert testimony about the source of the roof's damage. Even if expert testimony were unnecessary, Mr. Carraro must still proffer evidence "based on more than mere speculation, conjecture, or surmise." *Cypert*, 661 F.3d at 481 (quoting *Bones*, 366 F.3d at 875). In an attempt to do so, Mr. Carraro makes four arguments.

First, Mr. Carraro points to Mr. Rennison's acknowledgment that hail apparently damaged the vent caps and window screens. *See* ECF No. 63, at 4. This acknowledgment, according to Mr. Carraro, creates a genuine issue that wind and hail damaged the full roof. *See* ECF No. 63, at 2, 8, 9. In other words, Mr. Carraro reasons that if hail damaged the vent caps and window screens, then hail must have damaged the rest of the roof too.

This argument falls short. Hail can damage one part of a house's exterior but not another. And even if admitting hail damaged one part of the exterior meant admitting that hail damaged the full roof, the policy still would not cover damage to the roof. To repeat, the policy covered damage from wind and hail alone—not wind and hail plus aging.

Second, Mr. Carraro argues that if Allstate had repaired the full roof in 2018—rather than the north slope alone—then the roof would not have deteriorated in 2020. *See* ECF No. 63, at 11. Put differently, Mr. Carraro believes that the source of the roof's damage in 2020 was not age-related deterioration but insufficient insurance coverage in 2018. *See* ECF No. 63-1, at 1, ¶ 7.

Mr. Carraro does not support this contention. It is true that Mr. Carraro challenged Allstate's settlement of his 2018 insurance claim. *See* ECF 60-9, at 1-2. And the transcript of Mr. Carraro's deposition reveals that a 2018 estimate from a roofing company found damage totaling $18,791 (Allstate estimated the 2018 damages to be $4,024.93). *See* ECF No. 60-6, at 14; ECF No. 60-7, at 4. But this 2018 estimate is not in the record. Nor is anything else that supports the

13

contention that the policy should have covered the entire roof in 2018. In short, Mr. Carraro does not genuinely contend that his coverage was insufficient 2018. As a corollary, Mr. Carraro does not genuinely contend that insufficient coverage in 2018 was the source of the damage in 2020.

Third, Mr. Carraro asserts that "Statewide Roofing came out to inspect the Plaintiff's roof with the understanding that the roof had sustained hail damage." *See* ECF No. 63, at 4. This assertion was made in reference to the 2020 bid from Statewide Roofing showing damage totaling $22,137.02. *See* ECF No. 1-1, at 13. The bid itself is silent on the cause of the roof's damage.

Mr. Carraro's assertion in his response brief is not enough to create a genuine issue over the source of the roof's damage. *See* 10A Mary Kay Kane, *Federal Practice and Procedure (Wright & Miller)* § 2723, Westlaw (database updated Apr. 2022) (commenting that motion for summary judgment cannot "be defeated by factual assertions in the brief of the party opposing it, inasmuch as documents of this character are self-serving and are not probative evidence of the existence or nonexistence of any factual issues"). And even if this assertion created a genuine issue over whether hail damaged the roof, the policy still would not have covered the damage. Once again, Mr. Carraro must show that age-related deterioration did not cause the damage—the policy did not cover damage caused by hail and aging together.

Fourth, Mr. Carraro highlights his phone call with Mr. Pirkle that took place when Mr. Carraro returned home in April 2020. *See* ECF No. 63, at 4, 7-8. During this call, Mr. Carraro testified that Mr. Pirkle said that a storm had damaged neighboring houses and that Mr. Pirkle "assumed that [Mr. Carraro's] house was affected like these others." ECF No. 63-2, at 13. Mr. Carraro recounted that Mr. Pirkle told him that, like these neighboring houses, "you're probably going to need a new roof." *Id.* at 14. And, according to Mr. Carraro, Mr. Pirkle also stated that Allstate would pay for the new roof. *See id.*

This recap of Mr. Pirkle's comments is insufficient to genuinely dispute Mr. Rennison's conclusions. Mr. Carraro presents no evidence that Mr. Pirkle concluded that a storm damaged the roof after inspecting the roof for himself. At best, Mr. Pirkle made a conjecture during the phone call: (1) Mr. Pirkle knew a storm damaged neighboring houses, (2) Mr. Pirkle heard that Mr. Carraro's house was damaged, and therefore (3) Mr. Pirkle assumed that the same storm damaged Mr. Carraro's house. But Mr. Pirkle's conclusion is not based on personal knowledge—he had not seen the house. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . ."). Rather, Mr. Pirkle's conclusion is "mere speculation, conjecture, or surmise." *Cypert*, 661 F.3d at 481 (quoting *Bones*, 366 F.3d at 875). And that is not enough to genuinely support the thesis that hail damaged the full roof. What is more, Mr. Pirkle's comments do not genuinely dispute that age-related deterioration did not damage the roof.[10]

In the end, Mr. Carraro cannot challenge Mr. Rennison's expert testimony. Put differently, Mr. Carraro has not genuinely disputed that age-related deterioration—rather than hail or wind alone—damaged his full roof.

### 2. Entitlement to Judgment as a Matter of Law

Because Allstate's assertion about the source of the roof's damage is the only supported factual position, Mr. Carraro's three legal claims fail. First, Mr. Carraro alleged a bad faith failure to pay a first party claim. But to show bad faith, Mr. Carraro must prove "'a frivolous or unfounded

---

[10] Mr. Carraro does not argue that Mr. Pirkle's alleged statement, "Allstate will pay for it," created a legally enforceable promise. Instead, Mr. Carraro views this statement as an admission that hail damaged the roof and that the policy would thus cover damage to the roof. Any argument that Mr. Pirkle somehow bound Allstate through principles of agency law is therefore waived. *See Trans-W. Petroleum, Inc. v. U.S. Gypsum Co.*, 830 F.3d 1171, 1175-76 (10th Cir. 2016).

refusal to pay' by the insurer." *Yumokoglu v. Provident Life & Accident Ins. Co.*, 131 F. Supp. 2d 1215, 1226 (D.N.M. 2001) (quoting *Suggs v. State Farm Fire & Cas. Co.*, 833 F.2d 883, 890 (10th Cir. 1987)). Allstate's decision not to pay for the full roof is hardly frivolous or unfounded when the policy did not cover the damage to the full roof.

Second, Mr. Carraro alleges unfair claims practices that violate the New Mexico Insurance Code. *See* NMSA 1978, § 59A-16-20 (1997). But nothing in the statute prohibits and insurer from denying coverage that a policy does not provide. *See id.*

And third, Mr. Carraro alleges a breach of the implied covenant of good faith and fair dealing. But "the implied covenant of good faith and fair dealing cannot be used to overcome or negate an express term contained within a contract." *Sanders*, 2008-NMSC-040, ¶ 8. And here, the express terms of the policy did not require Allstate to pay for the entire roof.

### 3. Conclusion to Claims Involving Mr. Carraro's Roof

In sum, the Court must enforce the unambiguous policy provisions. *See Brown*, 1968-NMSC-096, ¶ 12. Under the policy, Allstate did not deny Mr. Carraro coverage to which he was entitled. And no genuine issue of material fact alters this conclusion. As a result, Allstate is entitled to summary judgment.

## III. CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that:

1. *Allstate's Motion for Summary Judgment* (**ECF No. 60**) is **GRANTED**; and

2. Plaintiff's claims, and thus this case, are **dismissed with prejudice**.

_____
SENIOR UNITED STATES DISTRICT JUDGE